16-1081 at L. City of Boston Delegation Petitioner v. FEDERAL ENERGY REGULATORY COMMISSION Mr. Fitzpatrick for Petitioner City of Boston Delegation Ms. Elephant for Petitioner Riverkeeper Inc. at L Mr. Fulton for the Respondent Mr. Marwell for the Intervenor Mr. Fitzpatrick, good morning Good morning  Thomas Fitzpatrick on behalf of the City of Boston Delegation Before addressing the merits, which I'm very keen to do, let me speak to the issue of standing It is technically a fact that in the now petitioner's motion to intervene that the City of Boston was not identified specifically as an intervenor That motion was allowed by the Commission But in the motion to intervene, the mayor of the city was identified specifically as the representative of the 617,000 residents of the city The mayor has authority to direct the Corporation Council to file suits That is correct And the mayor didn't do so Right? Is that not correct? No, I don't think that is correct, Your Honor The Did he direct the Corporation Council to bring a suit? The mayor directed Corporation Council to file the request for rehearing and to file this petition And with respect to the motion to intervene during the Commission proceeding the Corporation Council participated in the preparation of the motion to intervene at the direction of the mayor So the Corporation Council doesn't appear anywhere on the papers as far as I know That is correct, Your Honor And the city is not named as the party? The city is not named So isn't that typically what would happen? Is that the Corporation Council would prepare the papers and then introduce the action, let's say, in the name of the city? That would be most typical, I quite agree, Your Honor But what happened here was this was a motion to intervene in the proceeding in which the city, through the mayor, had already participated The mayor had written several letters on behalf of the city expressing concerns about the safety Under the law, the authorizing legislation for the city and under its ordinances all of the executive power and authority resides with the mayor including the authority, the power to direct the initiation of litigation But the same ordinances also tell us that the course in which that litigation ordinarily takes place is that the mayor, through the Corporation Council The Corporation Council is the one who makes the determination that the city is going to initiate an action and then does so in the name of the city I respectfully disagree The ordinance and also the practice, I represent the city frequently is that litigations are initiated only when the mayor directs it He certainly receives advice from the Corporation Council And in this case, he directed that all of these steps be taken And again, the Commission and Algonquin and the city all cite to the same ordinance And it's very clear that it's the mayor who has the authority to direct litigation And the case law from Massachusetts and the authorizing legislation which we've cited in our supplemental briefs and our prior briefs makes it clear that he is the apex of all governmental authority within the city The decision-making as well as the authority to exercise that decision-making Why didn't that happen here? I think that what happened, Your Honor, was that several elected officials representing the West Roxbury neighborhood have been corresponding with the Commission and writing letters And they wanted to intervene formally in the proceeding And they decided to join together And with the assistance of the Corporation Council, prepared that motion to intervene consolidating them all in one And we can see that it doesn't technically say that the city is an intervener But I submit to you, it doesn't matter Because the mayor is the one who decides The mayor has the authority to decide In the language of 5-8.1 Corporation Council instituted a suit of proceeding on behalf of the city which he shall deem the interest of the city requires And shall by himself raise assistance to his council in all suits which may involve the interest of the rights of the city That seems quite exclusive to me Your Honor, we in the city read that to mean that the mayor is the You in the city? Yeah What do you mean the city? The city of Boston The city of Boston and its law department Okay, I'm sorry, go ahead  To mean that the mayor decides what litigations to initiate And that the city law department and its Corporation Council is subordinate to him And that they implement his decisions Can I just ask then, what it says Which he shall deem the interest of the city requires The he, you're reading that to be the mayor rather than Yes, that is correct, Your Honor Really? So it's not the Corporation Council, it's not the he You are right, that is how we read it But I would say it doesn't matter Because the issue is the authority And the authority is that everything happens at the direction of the mayor The prior language But the Corporation Council, even if it's true that it's subject to the direction of the mayor If the way to read this is that, let's just say he means the Corporation Council Just humor me, you're obviously an expert on what this means More so than someone who's outside of your jurisdiction But then at least the Corporation Council would have to make the determination That it's in the interest of the city And of course the mayor could say If you didn't make the determination that I like Then that's going to be a problem for you I understand that But at least the ordinance presupposes That the Corporation Council is going to make that assessment Accepting the assumption, then that is correct The Corporation Council is essentially the mayor's lawyer He provides advice, he implements the directions of the mayor And I can tell you in this case We were retained to file the request for rehearing The instruction was from Corporation Council Fitzpatrick, the mayor wants you to file a request for rehearing And the same thing happened with the petition I was not involved in the motion to intervene But I'm told that the city law department was involved in it And prepared it, or assisted in the preparation at the direction of the mayor Are there cases then in Massachusetts courts That I didn't see any cited in the supplemental briefing In which the mayor is the named party instead of the city I believe it's the case involving the city of Revere The mayor was a party in that proceeding And the court said that it was appropriate for them To bring the proceeding in the public interest On behalf of the municipality Which one was that? It's the case involving Revere Your honor, when I rise from my rebuttal I have this I quote But I thought in Rickmer, that's Rickmer I think But I thought in Rickmer what happened was That there was actually a process under which When I looked at the opinion That the Corporation Council actually made the determination And then the city was made party to the case The mayor also was But the city was because the Corporation Council made the determination That is correct your honor Right, so that didn't seem like one Because the city actually was a party Yeah, but that is the one case I can cite to you your honor That's the closest you have Our position is that the mayor is the city for all purposes here And had the authority to initiate all of these proceedings If I can with the time left, address the merits very quickly The city, this has not been a not in my backyard issue for the city The city understands that there is going to be a gas pipeline Through West Roxbury It's only concern was about safety And our contention is that the findings And the determinations and the decisions made by the commission About the alternative route Were arbitrary, capricious and not supported by substantial evidence And in the FBIS And this is at page 868 of the record There is a very helpful map that shows The route that was approved and the alternative route And on the prior page, page 868 Is a table prepared by the commission Which looks at the metrics it chose to compare And it is very clear to us your honor And we've demonstrated this in our papers That the finding that the proposed route was preferable And that the alternative route was not Is not supported by the empirical evidence established In the commission's own analysis of it It is wrong for the commission to have said It is demonstrably wrong to have said for example That the lateral would go through more residential neighborhoods Which is how it defended its decision It is wrong when the commission says That the proposed route goes through more parking lots And commercially industrial areas That is demonstrably incorrect If one looks at the commission's own chart And its own maps It again says with respect to the sighting of the meter station That there will be traffic But the commission says about the proposed route That there will be very significant traffic delays All throughout the proposed route We accept that There's going to be traffic consequences and snarls But what the commission does is sort of say Well, if we went where you want to go There would be more traffic And I would again commend the court back to the commission To the chart at 867 It is very clear from that chart That there will be less traffic impact If the alternative route was accepted As to the other issues The other issues about why we think This should be found to be arbitrary and capricious and unsupported I'll rely on what's left in the brief What we say in the brief And I'll reserve the rest of my time Thank you Ms. Ellicott Good morning, your honors Carolyn Elephant For the Environmental and Community Coalition Petitioners I'm also here with Rebecca Zakas Who is the counsel for the town of Dedham Your honors, this is a case about passing the buck As part of its environmental review FERC effectively passed the buck By segmenting the projects And passing off review Of the Atlantic Bridge impacts To a subsequent proceeding With the safety issues FERC passed the buck By relying on the Nuclear Regulatory Commission's analysis Which incidentally is not even a part of the record And with regard to the conflicts issue It doesn't actually fit into that rubric But for the conflicts issue FERC essentially attempted to evade review By failing to identify the conflicts issue And then when it responded in its brief It relied on a changed regulation And forcing us to file a 28-J motion On the segmentation You had a diagram in your brief And I generally like diagrams But I have to say I found your diagram totally mystifying Partly because you're lettering on gray background So it's very hard to read And then sort of bunching up Sort of the squares containing information So there's a different approach Approach by words and numbers Page 40 of the intervener's brief Do you object to the assertions there As to timing? I'm talking about the top seven lines of page 40 I'm sorry, which page would this be on? Page 40 Oh, okay, I've got it here Are there any corrections? So in terms of the timing Really that was the diagram That was just intended to show the timeline There doesn't seem to be any dispute As to the timing So it appears that we have The final EIS January 2015 We have a seeking of pre-filing For Atlantic Bridge a week later And then filing of the application Ten months later All right, I mean, that seems Under Minisync To not pose the use of discretion In segmentation at all Your Honor, we would argue that As a result of Minisync It set a blueprint for how a company Can avoid segmentation One of the things that In this situation I'm sorry, are you saying The court in Minisync was Ruled by the Miscellation of somebody? No, so in Minisync the facts were Your Honor is correct, very similar There was a request for pre-filing That was filed either right after the EA Or right after the certificate had issued And that's exactly what happened here Right after the FEIS issued All of a sudden this pre-filing application Showed up So it seemed to me As if the applicant had taken a page Out of Minisync and said This is what the court will find Acceptable for segmentation But what distinguishes this case From Minisync are a number Had Minisync been decided at that point? Minisync was from 2014 It was decided In our decision? Excuse me? In our decision? Yes, Your Honor It was argued in May of 2014 And issued in August The decision came out in August 2014 Which I remember only for Bizarre personal reasons As to the timing In addition to the timing issues One of the factors that distinguishes This case on segmentation And there are many First of all, on the joint appendix At page 1491 Can we just come back a moment? Oh, I'm sorry Yes It's a little hard to come to us And argue that A predecessor panel Has established a device For parties to manipulate the system I mean, that Seems like an underhanded way Of getting us to try to Reverse a prior panel decision No, I apologize, Your Honor Absolutely, that was not my intent But what Minisync says is precedent And it's finding precedent And if this case were identical facts We wouldn't be here arguing The segmentation issue What we're arguing is That was the starting point The starting point was For the applicant to match The facts of the case to Minisync But we've identified Many other factors That suggest that this really Was a case of segmentation One being that the applicant itself Announced this intent To segment the project That seemed to have The same sort of problems Of attribution that were present In Minisync itself Okay, there were also I did not mention attribution But also the ambiguity Of the words purported to be quoted Yes, the other One other distinguishing factor Was in the Minisync case The second compressor station The Hancock station Was 60 miles from The Minisync compressor Here the construction Actually overlapped The Atlantic Ridge project took up Where the AIM project left off FERC itself acknowledged That there was going to be Construction on the Stoney Point compressor station And another compressor station Under the AIM project And then it was going to happen again Under Atlantic Ridge That was discussed in the FERC rehearing In the FERC rehearing order I think at paragraph 51 The overlap in construction Is Joint Appendix 1247-1248 The papers before FERC Showed the probability of overlap If the later projects went forward FERC tried to address that, right? Maybe imperfectly Surely imperfectly Because it didn't know exactly What the ultimate application Would say It took note of the possibility Of cumulative effects And assessed it Well, again, we felt that The assessment of cumulative effects Was very cursory The Atlantic Ridge project Was mentioned in one table only And FERC essentially concluded That, well, there may be some overlap But we conclude that there really Aren't any cumulative impacts Because the prefiling application Came in right after the FEIS FERC really did have additional information About what was in the Atlantic Ridge project And these projects could have been Better coordinated There was more that was known About the Atlantic Ridge project As a result of the Of the prefiling application That came in FERC's analysis of the cumulative impacts Again, in this case, were somewhat Were very cursory Can I ask this question? What's wrong, just as an abstract matter With erring on the side of waiting And allowing the rigorous analysis To take place in connection With the second-in-time application? Because it seems like The second-in-time application comes along And then you can always look back And see what's already in effect With the first-in-time application That's been approved And do the analysis at that time With the benefit of better information Well, there are a couple of issues with that First of all, under NEPA NEPA counsels a review of cumulative impacts And if we were to take that approach To an extreme, it would be a violation Yeah, so I wouldn't take it To an extreme I think you need to take into account Cumulative impacts But I'm just saying erring on the side Well, so one of the problems that you have Is when you don't review the projects As a whole up front You lose an opportunity To consider additional alternatives For example, could you downsize The second project As a result of the cumulative impacts Or as a result of your uniform analysis In the first case? The downsizing of the second project Would be on the plate, right? The second time around The downsizing of the first project Yes, yes, downsizing the first project, right Because once it's in the ground There's not much else you can do And so that's really one of the biggest problems With the segmented review And with FERC FERC is really the one that has to say You know, we're going to undertake This broader approach If I could quickly get to the issues On the nuclear, the NRC In that situation FERC really relied on what the NRC said And surprisingly, the NRC decision Is not, the NRC's analysis Of Entergy's submission Is not a part of the record The other, the cases that FERC cites They've cited many cases to say That this court has to defer To the expertise of an agency That is true, it's absolutely true When the agency is the one that did the analysis The problem here is FERC didn't do the analysis FERC adopted wholesale The analysis that the NRC had done And there really isn't much discussion When you say not on the record Do you mean that it wasn't printed out And the papers put in FERC's file? No, your honor Your honor, I mean that the citation to The citation in FERC's brief At page 39 Where it cites to the November 7th, 2014 NRC findings Regarding the Algonquin Project That is sort of the basis of FERC's reliance And the citation there is the joint appendix 1911 And then there's a cite to the NRC website So since there's no record designation And FERC put the record together It's not part of the certified record That FERC submitted That the commission submitted to this court I mean, nothing FERC did on paper Cited the Suble website page? No, your honor So in the decision FERC, what happened was In November 7th, 2014 FERC had a meeting with NRC staff And the citation to that meeting Is in the joint appendix at 699 It was a summary of the meeting Where basically the NRC said We agree with this analysis That Entergy Entergy is the owner of the nuclear facility The NRC said We agree with what Entergy did And we find that, you know In addition, the Nuclear Regulatory Commission Didn't consider these extras That the pipeline is going to add Like a concrete buffer And more reinforced pipeline walls And so that's what FERC keeps coming back to If you look at the FERC At the FERC opinions It keeps echoing that In the environmental impact statement FERC relies on that It's the FEIS at page It's 4-278 of the FEIS Where the EIS drafters say We find that there's no problem With the nuclear We don't see any safety issues Because the NRC adopted that Then if you look at the FERC certificate At paragraph 108 It parrots the FEIS Then when you look at the rehearing request At paragraph 201 FERC then says That goes back to its previous order So it basically There's this house of cards That relies on Essentially a summary of A one paragraph meeting That is in the record Now to be fair, your honors There was a little bit more discussion In the rehearing request A little bit of effort To respond to the arguments That the petitioner's experts made And the response there Was that, well Mr. Cooper-Woods and Mr. Blanche Made their arguments at the NRC And the NRC resolved their arguments So we don't have to address them  In case there's I know the commission Has made an argument about duplication I apologize, your honors If I can just finish this thought I've done over my time But FERC is the expert On pipeline safety Mr. Cooper-Woods I mean, the NRC Has to take into account In protecting nuclear projects The threats to the nuclear projects Yes, your Yes So it's Necessarily, I would think An expert in that Well, actually your honor If you look at the record There was a NRC board review And there was testimony From Mr. Cooper-Woods At page 1511 Where he was talking about The issues with the pipeline This is a 42-inch pipeline It's a huge pipeline And the types of pipelines That the NRC had dealt with Were smaller pipelines And there's concern that FERC didn't even look To really see What type of analysis The NRC had done about pipelines Mr. Cooper-Woods talked about The dangers of the Larger pipeline And in fact, he said In this board review He said to the NRC He said, I understand I'm not criticizing you It's just this is There's some pipeline operators Who don't understand These potential threats So there's a very real concern That these issues Weren't adequately analyzed By the NRC and the commission As the guardian of pipeline safety And the obligations under section 7 Should have reviewed that I apologize for going over my time Your honors, thank you All right, Mr. Fulton Mr. Fulton Thank you, your honors Ross Fulton for the commission Your honors, if I may I'll start quickly with the standing issue Regarding the Boston delegation As pointed out in the opening discussion With the petitioner The Boston ordinance On its plain language Says that the corporation city council Shall by himself or by his assistance Bring in action on behalf of the city of Boston The city is its own legal entity And it's not a mere technicality That the city itself has to bring in action That's like saying that That was just a technicality If I bring in action on behalf of my friend It's its own legal actor And Rickmer, the case cited by the petitioner Underscores that point Because in that case It's the city as its own party In the case, the court notes That it was brought by a vote Of the mayor and the city council Informing the corporation council To go ahead and bring suit On behalf of the city of Boston The burden's on the petitioner To establish standing And they haven't shown why that Plain process and plain language In the city ordinance Shouldn't be followed With regards to segmentation As the court As was discussed initially This case falls squarely Within menacing We have a situation here Where there was one Applied for project Another project That had just reached the pre-filing stage And so it was not a proposal The commission made a factual finding here That this was driven by market demand Similar to menacing And the As the menacing court further noted That the commission can assess The cumulative impacts To the extent the information's available About the initial project It can then go back And further assess And with the subsequent project It will have far more information About what actual impacts The first project had The commission here Despite the fact That it had limited information Made every effort to consider The potential future projects In its cumulative impacts analysis In fact What are the statuses Of the future projects? The Atlantic Bridge project The certificate has been issued For that project It is currently subject to re-hearing As the commission notes In the re-hearing order That project was actually shrunk By about 40 percent So what the environmental impact statement Actually represents Probably a worst case scenario Access Northeast was withdrawn So it is not pending Before the commission And that I think shows The problem of Forcing the commission to wait Contrary to its responsibility Under the Natural Gas Act To consider each application Before it is Should the commission have waited For years here Only for the last in time project To be withdrawn Forcing fully subscribed In fact Pipeline with customers to wait I hadn't noticed in the briefing The argument that the NRC Rested its calculations On smaller pipelines Is that the case? No your honor In fact if you look at And this goes to the point About what's in the record Between the certificate order The NRC issued its initial findings In November of 2014 After both an independent analysis And extensive discussions With commission staff For the next year or so Between the certificate order And the re-hearing orders issued There was correspondence Back and forth Between experts for the petitioners And with the NRC So if you look particularly At JA 1735 The NRC responds To the allegation That the Nuclear Regulatory Commission Has an unrealistic valve closure time For the pipeline for instance And the NRC responds We studied the issue We considered valve closure times Up to an hour And found that it did not have A meaningful impact Similarly on JA 1745 The NRC states that With concerns about the blast radius From a bigger pipeline The NRC says that That is a misunderstanding Because natural gas is a gas And so most of it will dissipate The commission then Reviewed those findings And noted first in paragraph 201 Of the re-hearing order JA 1851 That they noted that The experts for petitioners Filed these petitions With the Nuclear Regulatory Commission The Nuclear Regulatory Commission Responded and continued to conclude That a potential rupture In a worst case scenario Does not pose a threat The commission then added In paragraph 203 JA 1852 That the commission will rely On other expert agencies Provided that the commission's staff And the commission has its own Experts on staff Are satisfied as to the competence And the validity Of the basic data and analysis So the commission Did in fact review The competing expert opinions And under Murray Another precedent of this court The court defers To the commission's considerations Of experts I would also further note One other thing, your honor That not in the joint appendix But attached to The state petitioner From petitioners in this matter Last year They attached further correspondence Back and forth between The Nuclear Regulatory Commission And FERC And NRC asked FERC Whether they wanted to use their own Whether the commission Should use its own Blast modeling data And the commission said no Ours is used To measure liquefied natural gas Explosions Given that that involves a liquid And not a gas And that we find that The Nuclear Regulatory Commission's analysis Remains A reasonable analysis So In short, the commission Did rely on the other expert agency Who's entrusted to Review nuclear Safety threats And found that their analysis Was reasonable and adequately addressed The concerns raised by the petitioner's Experts With regards to the Alternatives in West Roxbury To the quarry, your honor I would only note that the commission Did not say that it would Go through More or less residential neighborhoods What the commission said is it acknowledged That the proposed alternative Would go by more Homes, but it would have fewer impacts On the residential neighborhoods At issue because the alternative Would require long-term easements Through people's backyards and street closures Whereas the chosen route Would Primarily use existing right-of-ways Through roads and Commercial and industrial parking lots And so not only would that Have fewer impacts on residents But it would also have fewer environmental Impacts since those are already existing Right-of-ways and would not involve Digging up folks' homes To put in pipeline The commission is the Party that is entrusted to make These sort of weighing of alternative Analysis and has Can reach, as long as the commission Considers these reasonable alternatives It can reach a Conclusion If there's no further questions I'm happy to cede my time Thank you Mr. Marwell Please support Jeremy Marwell, correspondent Intervenor, Algonquin If I could start with segmentation And the status of the projects As the commission has indicated Can I just ask you a question Since you were the party who Asserted this most vigorously So on the city of Boston If we take If we accept the argument put forward By city council to the effect That it's just a technicality To have the mayor rather than the city And that the mayor actually is the city Let's just assume for purposes of argument That that's true Then would you dispute The notion that if the city in fact Is before us, then under The Maryland People's Council decision That there's standing Based on the logic of that decision Since municipality under the statute Is defined to include both a state agency and a city Yes Accepting that assumption, which obviously we dispute I think, and assuming that you were Prepared to technically extend Maryland People's Council, which was a state agency This is a municipality So I think there is a distinction, but as you say The statute speaks to both Right, so does that distinction matter Because if the statute defines municipality To include both city and state agency Then are we over the hump On that? I think perhaps the other distinction is What is the If you were writing on a fresh slate after Lexmark And the other decisions suggesting that Some branches of prudential standing Or what was previously called prudential standing And I took that to be the linchpin of the Maryland People's Council Analysis If it is prudential, then Congress can overrule it In the Natural Gas Act So I think if you were prepared to Continue to believe that third party standing Or parents' patria standing Was prudential, then that would be You could extend Maryland People's Council But Lexmark, do you think Potentially calls into question the underpinnings Of Maryland People's Council to begin with The footnote Reserves the question of third party standing But I think the rationale of the decision It recognizes that in the past Concepts like a generalized grievance Have been understood as prudential standing That the court moves them in the direction And there's the Second Circuit decision cited in our Supplemental brief Where the Second Circuit suggests that third party standing Is really article three So I think it's an open question This court has There are decisions from this court that have Referred to third party standing as prudential Post-Lexmark. I don't think they really Engage with the issue So I think it's A knotty question But for the reasons in our brief, I don't think you have to Areach it Because of the assumption Exactly On segmentation The Atlantic Bridge project Was approved by the commission on January 25th 2017. In other words, the commission Issued the certificate order The Algonquin Equal Mental Market Project entered full service Several weeks before that, so January 7th 2017. And I think the proof is Essentially in the pudding here when you look at independent Utility. The company Proposed, sought approval for, constructed And placed in service this first project Before the second project In the supposed series had been approved By the commission Counselor, you used the concept Of the absence of a rate Subsidy or roll-in Could you explain that? That goes to the Issue of independence Yeah, so I'm sorry In Delaware Riverkeeper Network, this court Was analyzing four Upgrade projects on A different pipeline, a different company's pipeline And it looked at the fact that when The commission was setting rates For one project versus the second project There was an interrelationship So that essentially One project was benefiting from the other And so it made sense to give credit To adjust the rates in that way Nothing like that is present here The rates were set independently With the application of the commission's standard Certificate policy, which requires A new project to stand on its own And not impose any costs On existing customers The commission made a finding That this was a market-driven project It has distinct customers Distinct receipt points, distinct Delivery points, there is some overlap But where there was overlap, the commission Acknowledged it This court has said that timing Is a particularly important characteristic For segmentation claims And we would agree with Judge Williams Or with Judge Williams' question That there was no Application pending for the second project Here, and that's a critical point in the commission's Process. If you look at why That is so, the Atlantic Bridge project Changed quite dramatically from its Pre-filing to its application You have the numbers in the record, but 36 miles of pipe At the time of pre-filing 6.3 miles of pipe at the application And I think that shows, if what you're Trying to do is understand what are the actual Environmental effects, that's a very Significant distinction, and it shows why The concept of proposal Should be tied to an application Is there no further questions? All right, finished right on time Okay, does Mr. Fitzpatrick Have any time left? All right, why don't you Take one minute. Oh, well thank you very much Very quickly It is the case that we cited to Rick Muir Versus Revere. We cited to it In answer to the court's question About under Massachusetts law Can municipalities Sue Lutperin's Patry, which they can, and that's why we cite To it. Mr. Fulton's Comment about it, I just want to say this That case doesn't concern Boston It concerns Revere. Every city has A different sort of governmental set of ordinances Initiation of a lawsuit A lawsuit does not require a vote of the city council It requires the direction of the mayor So I just make that comment about Rick Muir The other issue The commission Takes issue with Our assertion that the commission Found that the alternative Route passed Through more residential neighborhoods Than the proposed route, and he backed Off of that just now It is very clearly stated at page 867 of the record that the Commission justifies Its choice by saying That the proposed route passes through Fewer residential neighborhoods The chart at that page and the map on the following page Show that that is false We recognize the great Deference that the commission Is entitled to, but what we're arguing is That if you drill down into the findings That support the choice it made They are clearly not Supported by the record And again, those two pages of the record Will establish. Thank you very much Thank you. How about Ms. Oliphant, does she have any time? Alright, why don't you take a minute Your honors, just to Quickly respond to the commission's point about The NRC Reviewing paragraph 201 of the rehearing decision FERC did not cite To, it references Different studies By the NRC, but it didn't actually cite To that document. The one document that FERC Does cite to is the Environmental impact statement So we would argue that any reference to these Documents that are outside of the rehearing request Are post hoc rationalizations of the Commission's decision on the Nuclear safety issue And on the segmentation And cumulative impacts issue As we've argued before There was significant Enough overlap between these Projects, as much overlap In terms of environmental impacts as there was In Delaware River Keeper I don't have any further remarks Alright
judges: Henderson, Srinivasan, Williams